**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA**

**Plaintiff**

**v.** **Case No. 4:09cv15/RH/WCS**

**FLORIDAUCC INC.**
**and**
**RUSSELL EDOUARD DONALDSON ROBINSON**

**Defendants**

---

**MOTION FOR SUMMARY JUDGMENT**

Comes now the Federal Defendant and pursuant to Rule 56, Fed. R. Civ. P., moves for summary judgment on the grounds that there is no triable issue of material fact and that the United States is entitled to judgment as a matter of law. In support of said motion, below is the government's memorandum.

A. Applicable Legal Standard

In the instant case, the United States has filed a complaint seeking injunctive relief. See complaint, ¶ 6, 7. The United States, in its complaint, alleges that the Defendant Robinson fraudulently and falsely filed financing statements in the State of Florida public records against its employees, Marcia M. Waldron, Clerk of Court for the

United States Court of Appeals for the Third Circuit and Shannon L. Craven, Deputy Clerk of Court for the United States Court of Appeals for the Third Circuit which has harmed Marcia M. Waldron and Shannon L. Craven, as the statements are untrue and have adversely affected each's credit ratings.   The United States now seeks summary judgment.

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "*shall* be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Emphasis added).  In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court wrote that "the plain language of Rule 56(c) *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial."  477 U.S. at 322 (Emphasis added).

The inquiry performed by a court deciding a motion for summary judgment is the threshold inquiry of determining whether there is *any* need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 91986).  See *Mulhall v. Advance Security, Inc.*, 19 F.3d 586 (11th Cir. 1994) ("On a motion for summary judgment, the court must access the

proof in order to see whether there is a genuine need for a trial"), citing *Masushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing summary judgment is therefore required to show that a trial is necessary before the case can be decided. Thus, in order to avoid summary judgment, both the Defendant Robinson and the Defendant FloridaUCC, Inc. need to point to evidence with sufficient probative force to allow a finding in either favor, thereby requiring a trial before a fact finder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251, citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 422, 448 (1872). See also *Brown v. American Honda Motor Company, Inc.*, 939 F.2d 946, 950 and 953 (11th Cir. 1991), *cert. denied*, 112 S. Ct. 935 (1992); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595-96 (11th Cir. 1987).

**a. Facts**

The Defendant Robinson is a federal prisoner who has filed a number of pleadings with the Third Circuit Court of Appeals since approximately 2000. Statement of Facts (SOF), ¶ 2. His latest involvement before the Third Circuit was his appeal from his conviction in the District Court of the Virgin Islands in Case No. 07-2369. SOF, ¶ 1. In that case, the Defendant Robinson had his attorney dismissed and proceeded pro se thereafter. Id. Third Circuit records reflect that since approximately 2000, the Defendant Robinson has been involved in some capacity with eleven (11) cases filed in the Third Circuit Court of Appeals, involving direct criminal appeals, mandamus actions, and appeals in civil rights cases. SOF, ¶ 2,3. The Defendant has lost most of those appeals.

*Id.*

Marcia Waldron is employed as the Clerk of Court for the United States Court of Appeals for the Third Circuit. SOF, ¶ 4. Shannon Craven is employed as the Deputy Clerk for the Third Circuit. SOF, ¶ 5. During the course of their duties, they have been involved with the Defendant's Robinson's Appeals and from time to time, have had to communicate to the Defendant Robinson. *Id.*

The Defendant, Florida UCC, Inc., is a corporation incorporated in the State of Florida, which contracts with the State of Florida to maintain the Florida Secured Transaction Registry (Registry) wherein the Defendant Florida UCC, Inc., accepts Uniform Commercial Code filings, including financing statements, records them and makes such filings available to the public by on-line access through computer terminals. SOF, ¶ 6. The Registry is maintained by the State of Florida as part of its comprehensive scheme for the regulations of security transactions pertaining to personal property (Code) within the State of Florida. SOF, ¶ 7. Florida law defines a "financing statement" to be any filed record relating to the initial financing statement. SOF, ¶ 8.

The State of Florida has adopted a system of notice filing in order to perfect an interest in personal property. SOF , ¶ 10. The purpose of a financing statement is to give notice to all interested parties that someone claims a secured interest in the personal property listed. SOF, ¶ 12. A financing statement is sufficient to provide notice to all who intend to enter into a financial relationship with the debtor that there is a claim on the debtor's property if the statement contains the name of the creditor, the debtor, and a

description of the property. SOF, ¶ 12. The required notice is the filing of a financing statement with the Registry. Id. Upon the filing a such a statement anyone dealing with the debtor as identified in the filing is required to contact the secured creditor to ascertain the correctness of the claim or, failing that, can lose any priority in interest. Id  The filing creates a cloud upon the alienability and title of the Debtor's personal property. Id. While earlier versions of the Code required the debtor to execute the financing statement, this requirement was removed to encourage paperless filings. SOF, ¶11. While a person may file a financing statement *only if* the debtor authorizes such a filing, there is no statutory mechanism to safeguard an individual from fraudulent filings. FloridaUCC, Inc.'s answer, document 8, SOF, ¶ 13.

On or about March 10, 2008, the Defendant Robinson caused to be filed an initial Financing statement with the Registry wherein the Defendant claimed a security interest in all personal property of Marcia Waldron and Shannon Craven securing a debt owed him in the amount of $1, 500,000,000.00. SOF, ¶ 17. It was accepted by the defendant FloridaUCC, Inc., assigned number 200807827329, and was made available on line indexed under the names Marcia Waldron and Shannon Craven. Id. In that financing statement the defendant Robinson referred to the existence of a security agreement creating said interest. Id.

Notwithstanding that representation, neither Marcia Waldron nor Shannon Craven have any financial relationship with the defendant Robinson, have not authorized the filing of said financing document, and have not created any financial relationship

whatsoever with the Defendant Robinson. SOF, ¶19. Any assertions to the contrary are false and fraudulent. Id.

On or about May 19, 2008, the defendant filed a financing statement amendment with the Defendant FloridaUCC, Inc., referencing the initial financing statement identified above, securing a debt in the amount of $ 74,000,000.00 and purporting to add security. SOF, ¶20 See also answer of FloridaUCC, Inc., ¶ 10. Again, notwithstanding that representation, neither Marcia Waldron nor Shannon Craven have any financial relationship with the defendant Robinson, have not authorized the filing of said financing document, have created no security document and do not owe the Defendant Robinson any money. SOF, ¶ 22. Any assertions to the contrary are false and fraudulent. SOF, ¶ 21. There exist no debtor/creditor relationship between Waldron and Craven and the Defendant Robinson that would authorize or justify the defendant Robinson's filing of the financing instruments identified above. SOF, ¶ 23.

On February 11, 2008, the Defendant Robinson filed a response styled a "Response Via Writ Praecipe. See Document 5. In that document, the Defendant Robinson appears to be acknowledging that he, in fact, filed the statements identified above but is asserting that this Court has no personal or subject matter jurisdiction to entertain the suit.[1] See response, p. 2, ¶ 4, p. 3. ¶ 6. On March 11, 2009, the Defendant

---

[1] In truth, much of what the Defendant Robinson writes in his response is gibberish and is not based in fact or law. While counsel may be mistaken, based on previous experience, Government counsel believes that the Defendant is asserting that he is a "sovereign person"over whom neither the United States nor this Court has jurisdiction and that the United States of America has only the authority to deal with him, as an equal, in "common courts of law" based

FloridaUCC, Inc., filed an answer acknowledging the existence of the filings described above but denying any responsibility to protect those whose credit is slandered by false and fraudulent filings, and asserts, as an affirmative defense, that it has no ability to expunge or destroy public records but can remove them of record. See Document 8.

**ARGUMENT**

The pleadings in the instant case raise four issues; whether this court has personal and subject matter jurisdiction; whether the government has stated a cause of action upon which relief may be granted; whether this Court can fashion relief for the government's employees in the form of affirmative injunctions in order to undo the intentional harm done by the Defendant Robinson, and whether this Court can require the Defendant Florida UCC, Inc., to take affirmative steps to correct the registry. Each issue will be addressed under separate heading.

**1. The Court has both subject matter and personal jurisdiction**

**a. Personal jurisdiction**

The easiest question to resolve is whether this Court has personal jurisdiction over the parties. The answer is, notwithstanding the Defendant Robinson's curious assertions, both parties have been served and both parties have answered, thereby establishing the Court's personal jurisdiction over the defendants. See returns of service, Documents 4, 6. Likewise venue exists as the incidents complained of occurred in

---

on "Federal Commercial law" as found in the Commerce Clause of the United States Constitution. As noted by the District court in the Middle District of Alabama, such efforts are simply not authorized by law. *U.S. v. MacElvain*, 858 F.Supp. 1096, 1100 (M.D.Ala.,1994).

Tallahassee, within the Northern District of Florida. Title 28, United States Code, Section 1391 (b). This Court has personal jurisdiction over the parties and the venue lies in the Northern District of Florida

**b. Subject Matter jurisdiction**

The Defendant Robinson also asserts that this Court does not have subject matter jurisdiction, apparently laboring under the personal belief that this Court can't have subject matter jurisdiction. <u>See</u> response, page 1, ¶ 1. In its complaint, the United States asserted that this Court has jurisdiction pursuant to the provisions of Title 28, United States Code, Section 1345 and 1346 (b)(1). § 1345 is a grant of general subject matter jurisdiction when the United States is the plaintiff. It has no stated limitations. Moreover, other statutes clearly recognizes the Court's jurisdiction. <u>See</u>, as examples, Title 28, United States Code, Section 1346 (b)(1),(2) (subject matter jurisdiction where the government or its employees are defendants) and Title 28, United States Code, Section 1442 (removal of cases brought against federal employee from state court to federal court). It would appear incongruous for this Court to have subject matter jurisdiction only where the government's employee is sued in a state court but not when a federal employee is the subject of harassment in the form of fraudulent liens.

While the undersigned has been unable to find controlling case law, those courts which have addressed the question have found subject matter jurisdiction. <u>See</u> *United States v. MacElvain*, 858 F. Supp. 1096 (M.D. Ala. 1994), affirmed, 68 F.3d 486 (11th Cir. 1995)(voiding lien, expungement, and permanent injunction), *Monroe v. Beard*, 536

F.3d 198, 203 (3rd Cir. 2008), *United States v. McKinley*, 53 F.3d 1170 (10th Cir.1995)(affirming order declaring false commercial lien, filed by defendant-inmate against prosecutor and judge, "null, void and of no legal effect"); *United States v. Martin*, 356 F.Supp.2d 621 (W.D.Va.2005)(granting government's request for civil injunctions and monetary damages against defendant-inmates who filed false commercial liens against judges and prosecutors); *United States v. Orrego*, No. 04-CV-0008SJ, 2004 WL 1447954 (E.D.N.Y. June 22, 2004)(granting injunction and an award of money damages in civil action brought by the government against defendant-inmates who filed fraudulent liens against judge as retribution for using inmate's "copyrighted" name); *United States v. Anderson*, No. 97C821, 1998 WL 704357 (N.D.Ill. Sept.25, 1998)(granting declaratory, injunctive and monetary relief for government in action against defendant-inmate who filed commercial liens against judge, prosecutor, and his public defender). As noted by the Southern District in *U.S. v. Barker*, 19 F.Supp.2d 1380, 1383 (S.D.Ga.,1998):

> It is by now established beyond dispute that the United States may request the assistance of Article III courts to protect its officials from attempts at harassment, intimidation, and extortion in the form of "liens" commonly filed by tax protesters and prisoners. Every court to consider the validity of such documents has held them invalid. (Citations omitted.)

Moreover, this Court is empowered to act pursuant to the provisions of Title 18, United States Code, 1345, to grant injunctions to enjoin fraud, where appropriate.

Thus, it is clear that this Court has subject matter jurisdiction.

**2. The government has set out a cause of action upon which relief may be granted.**

If one construes the Defendant Robinson's response to be a motion to dismiss for

a failure to state a cause of action, the Defendant's effort fails. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff. See *Jenkins v. McKeithen*, 395 U.S. 411, 421-22, 89 S.Ct. 1843, 1848-49, 23 L.Ed.2d 404 (1969). Further, the court may only grant such a motion where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In determining the facts for purposes of such a motion, the court must, "at this stage of the litigation, ... accept [the plaintiff's] allegations as true." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

The government in its instant complaint asserts that the Defendant Robinson has intentionally filed false and fraudulent liens against federal employees, to cause harm, either for the purpose of harassing the employees or as retaliation for those employees performing those duties. The facts fully support this allegation. SOF ¶ 17, 18, 19, 20, 21. Thus, the government asserts that the Defendant Robinson has committed what would be the common law tort of slander of title/credit, which is actionable. In *Caldwell v. Personal Finance Co.*, 46 So.2d 726 (Fla.1950) the Florida Supreme court recognized slander of credit as a cause of action, the element of which were 1) the defendant willfully and maliciously made a false statement to another 2) regarding the plaintiff's indebtedness, 3) which statement was known by the defendant to be false when made, and 4) was made with the intent of preventing the plaintiff from procuring credit. *Id.* at

727. See also; *Musto v. Bell South Telecommunications Corp*. 748 So.2d 296, 297 (Fla.App. 4 Dist.,1999). The law is also clear in Florida that disregard for the truth in reporting a credit transaction, especially when coupled with the failure to correct the inaccuracies, constitutes libel per se. See *Vinson v. Ford Motor Credit Company*, 259 So.2d 768 (Fla.App.1st, 1972). Moreover, it is clear in the State of Florida that where words are libelous per se, malice is presumed as a matter of law. See *Johnson v. Finance Acceptance Company of Georgia*, 118 Fla. 397, 159 So. 364 (1935) and *Matthews v. Deland State Bank*, 334 So.2d 164, 166 (Fla.App. 1976).

**3. This Court can provide injunctive relief.**

Every federal court which has been faced with the problem presented in this case, a prisoner filing of a fraudulent lien, has recognized the power of the court to enter affirmative injunctive relief upon the finding of the existence of several elements. See, as an example, *United States v. McKinley*, 53 F.3d 1170, 1171-72 (10th Cir.1995). A party moving for a permanent injunction must show the following: (1) some actual danger of a recurrent violation and not simply a possibility of a future violation; (2) substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not be a disservice to the public interest. See, generally, *Shanks v. City of Dallas*, 752 F.2d 1092, 1096-97 (5th Cir.1985). Applying this to the facts of this case it is very clear that the Defendant is but a small but growing group of prisoners who abuse legal process in order to retaliate against those employees

to, in the performance of their jobs, necessarily "cross" these prisoners. Injunctive relief is appropriate upon a showing of irreparable harm. See *United States v. McKinley,* 53 F.3d 1170, 1171-72 (10th Cir.1995), *U.S. v. Bey* 1998 WL 384289, 1 (6th Cir. 1998). As noted by the Third Circuit in *Monroe v. Beard* 536 F.3d 198, 203 (3rd Cir. 2008):

> In federal criminal and civil prosecutions of inmates filing false commercial liens against prosecutors, judges, corrections officers and other government employees, courts have uniformly declared those liens null and void. *See, e.g., United States v. Joiner,* 418 F.3d 863 (8th Cir.2005)(affirming judgment of conviction of conspiracy to injure a judicial officers in their property and to intimidate judicial officers in the discharge of their duties against defendant-inmates who filed false UCC liens against judges and prosecutors); *United States v. Speight,* 75 Fed.Appx. 802 (2d Cir.2003)(affirming judgment of conviction against defendant-inmates claiming that government officials owed them multi-million dollar debts and filing fraudulent liens to obtain those "debts"); *United States v. McKinley,* 53 F.3d 1170 (10th Cir.1995)(affirming order declaring false commercial lien, filed by defendant-inmate against prosecutor and judge, "null, void and of no legal effect"); *United States v. Martin,* 356 F.Supp.2d 621 (W.D.Va.2005)(granting government's request for civil injunctions and monetary damages against defendant-inmates who filed false commercial liens against judges and prosecutors); *United States v. Orrego,* No. 04-CV-0008SJ, 2004 WL 1447954 (E.D.N.Y. June 22, 2004)(granting injunction and an award of money damages in civil action brought by the government against defendant-inmates who filed fraudulent liens against judge as retribution for using inmate's "copyrighted" name); *United States v. Anderson,* No. 97C821, 1998 WL 704357 (N.D.Ill. Sept.25, 1998)(granting declaratory, injunctive and monetary relief for government in action against defendant-inmate who filed commercial liens against judge, prosecutor, and his public defender).

536 F.3d at 203.

Indeed, in the unreported case of *Gibson v. Crist,* 2007 WL 2257522, 1 -2 (N.D.Fla.,2007) a Magistrate Judge of this Court recognized the propriety of judicial action, noting:

> The abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment

> of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented. (Citations omitted.)

Directly put, the Defendant Robinson's common law theory of right simply does not exist. As noted by the Tenth Circuit in the *McKinley* Case:

> To read these documents ... is to recognize the fundamental frivolity of the legal tenets espoused therein. We are not familiar with a citizen-customer's authority to exact a consensual commercial lien from a public official, but it is a power that has no mooring in either federal or state law.

53 F.3d at 1171-72.

4. **The grounds for affirmative injunctive relief exists.**

Perhaps the best statement concerning the propriety of court action under such circumstances as set out above comes from the Southern District of Georgia in the unpublished case of *U.S. v. Gordon* 2006 WL 2724908, 3 (S.D.Ga.,2006), where that Court noted:

> It is by now established beyond dispute that the United States may request the assistance of Article III courts to protect its officials from attempts at harassment, intimidation, and extortion in the form of 'liens' commonly filed by ... prisoners." *United States v. Barker*, 19 F.Supp.2d 1380, 1383 (S.D.Ga.1998). Many courts have considered "liens" identical to those at issue in the instant case, and in each instance the courts have found such purported "liens" to be invalid. See, e.g., *United States v. McKinley*, 53 F.3d 1170, 1171-1172 (10th Cir.1995); *United States v. Reeves*, 782 F.2d 1323, 1326 (5th Cir.1986); *Ryan v. Bilby*, 764 F.2d 1325, 1327 (9th Cir.1985); *United States v. Davis*, 2006 WL 2238457, *2 (E.D.Tex.2006). In all of the cases involving such "liens," prisoners have attempted to exact revenge on the public officials that the prisoners hold accountable for their incarceration, and each court has recognized the absurdity and maliciousness of such a practice. In fact, one court has commented that "[t]o read these documents ... is to recognize the fundamental frivolity of the legal tenets espoused therein. We are not familiar with a citizen-customer's authority to exact a consensual commercial lien from a public

> official, but it is a power that has no mooring in either federal or state law." McKinley, 53 F.3d at 1171-72.
> This Court has previously addressed similar baseless "liens" filed by federal inmates and has found them void and with no legal effect. See United States v. Barker, 19 F.Supp.2d 1380 (S.D.Ga.1998). In Barker, the Court explained that in the "ridiculous world of these defendants, any federal official who rules against the defendants or who takes a position adverse to the defendants has breached his duty to the public and can be sued under [a] mysterious social contract." Id. at 1383. The defendants in Barker, as the defendants in the instant case, filed "liens" against various federal officials, including judges, prosecutors, and anyone else believed to have wronged them in some way, but provided "no statutory, constitutional, or common law support for the validity of these purported liens." Id. The Court thus found that the practice of filing such liens "unduly interfer[ed] with the government's ability to perform its duties," since "[p]ublic officials subject to harassing and malicious filings such as the liens at issue in this case cannot effectively perform their duties." Id. at 1384.

In the instant case, like so many of the cases cited above, the Defendant Robinson, in an apparent effort to “punish” federal employees for doing their jobs, has filed financing statements against them in the public records of the State of Florida. Their very existence causes undue interference with the government’s ability to perform its duties as it distracts federal employees subject to such liens from the conduct of their duties. Further, the Defendant Robinson, in filing a successive amended statement has demonstrated his intent to continue these abusive filings against these employees and others. Not only should this Court act to declare that the existing liens to be null and void, but it should go further and stop the individual defendant from continuing such harassment by enjoining him from doing so. As noted by the District Court for the Southern District of Louisiana in *U.S. v. Bellazerius,* 2006 WL 2631937, 5 (E.D.La.,2006):

> Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions. If such power did not exist, or if its exercise were somehow dependent upon the actions of another branch of government or upon the entitlement of a private party to injunctive relief, the independence and constitutional role of the Article III courts would be endangered.
>
> *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir.1984). Under such circumstances, a federal court may issue a broad injunction to prevent future harassment. Id.; see also *Barker*, 19 F.Supp.2d at 1385. Accordingly, in addition to invalidating the existing documents, the Court may enjoin the filing or transmitting of any documents purporting to attach or otherwise encumber any assets of any former or current federal official or employee. *Barker*, 19 F.Supp.2d at 1385.

**5. The Defendant FloridaUCC, Inc., has not demonstrated any reason to deny the relief requested**.

The Defendant FloridaUCC, Inc., has answered. See Document 8. In its answer, it asserts that it is a contract vendor for the State of Florida charged with the responsibility of maintaining the Registry. Id. It further asserts that there is no Florida law that would permit expungement of the records as requested by the government in its complaint. *Id*. The Defendant FloridaUCC, Inc., appears to recognize that this court has the power to fashion some form of relief. It certainly has not suggested that as a contract vendor, it enjoys as immunity from suit or that it is impossible for the Defendant FloridaUCC, Inc., to provide the relief requested. Indeed, it would appear that the Defendant's position is incorrect in that there are recognized filing forms, such as a notice of cancellation, available to provide the relief requested and the Defendant acknowledges that it can remove the record but can not "expunge" the record. Accordingly, the entry of a notice indexed under the names of the federal employees

containing a statement such as *"The United States District Court for the Northern District of Florida have found the financing instruments to be null, void, and of no effect"* in necessary for full relief.

Further, the Defendant FloridaUCC, Inc., does not suggest [nor can it] that it does not have the ordinary duty of reasonable care in the exercise of its duties required of everybody.  It is axiomatic that, as any entity, based on the facts known to the Defendant, the Defendant must exercise that duty of care necessary to insure that the innocent are not harmed by its conduct.  That is also implicit in the state statute. See F.S. § 679.510 (A financing statement is effective only to the extent it was filed by a person authorized to file.).  It would appear inconsistent to state that a improperly filed financing statement has no effect and then have no mechanism to remove such an instrument.   In any event, there is no limitation on the power of this Court to correct the harm done.

**6.     Conclusion**

Based on the foregoing, the government moves for summary judgment and an order from this Court proving the following relief:

a.  a finding the financing instruments filed by the Defendant Robinson against Marcia Waldron and Shannon Craven to be null, void, and of no effect whatsoever;

b.  As to the Defendant FloridaUCC, Inc., a finding that the exists no financial relationship between Marcia M. Waldron and Shannon Craven and the Defendant Robinson and the filings identified as exhibits 1 and 2 are false and fraudulent and their continuing publication by the Defendant Florida UCC, Inc., is  improper; and entering an

affirmative injunction;

- enjoining the Defendant, FloridaUCC, Inc, from continuing to publish said notices; enjoining the Defendant, FloridaUCC, Inc, from accepting any further filings from Defendant Robinson, or those who either act on his behalf or through him, without further order from this Court;
- requiring said defendant, FloridaUCC, Inc, to search its registry to insure that all filings against Marcia M. Waldron and Shannon Craven are removed;
- requiring the Defendant, FloridaUCC, Inc., to either place a notice in its files as suggested above or respond to any inquiries from the public at large about any filings against Marcia M. Waldron and Shannon Craven by the Defendant Robinson by a written statement declaring the fraudulent and false nature of such filings;
- requiring the Defendant, FloridaUCC, Inc, to disclose any new filings made by the Defendant Robinson to the United States Attorney for the Northern District of Florida without delay; and

c. As to the Defendant Robinson, that the Court enter an order against the Defendant Robinson finding that the documents set out in exhibit 1 and 2 are false and fraudulent; finding that Marcia M. Waldron and Shannon Craven have no financial relationship of any nature with the Defendant Robinson and therefore have no debt or other obligation, of any nature, owed the Defendant Robinson; and entering an

affirmative injunction;

- permanently enjoin the Defendant Robinson from filing or attempting to enforce said claims in any manner whatsoever, without a prior order from this Court;
- permanently enjoining the Defendant Robinson from filing or attempting to file, directly or through the services of others, any new financing statements, notices of indebtedness, claims or purported liens, of whatever nature, either with the Defendant FloridaUCC, Inc., any federal agency, any State of Florida agency, or any of the counties maintaining recording registries, all other state or local debt registry, and any private registry or clearinghouse of debt information, without first obtaining leaver of this Court authorizing such effort.

WHEREFORE, based on the above, the government prays for the entry of summary judgment in favor of the government and against the defendants.

          Respectfully submitted,

THOMAS F. KIRWIN
United States Attorney

/s/ *Benjamin W. Beard*
BENJAMIN W. BEARD
Florida Bar No.0145746
Asst. U. S. Attorney
21 East Garden Street
Pensacola, FL 32502
850-444-4000

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Motion For Summary Judgment was served by first class mail on Pro Se Russel Edouard Donaldson Robinson, at his address of record, Reg. No. 04776-094, FCI Jesup, Federal Correctional Institution, 2680 301 South Jesup, Georgia 31599 and Larry Simpson, Esq., Attorney for defendant FLORIDAUCC, INC., at his address of record , P. O. Box 10368, Tallahassee, Florida 32302, this March 16, 2009.

/s/ *Benjamin W. Beard*
BENJAMIN W. BEARD
Assistant U.S. Attorney