# SENATE STAFF ANALYSIS AND ECONOMIC IMPACT STATEMENT

(This document is based on the provisions contained in the legislation as of the latest date listed below.)

| | | | |
|---|---|---|---|
| BILL: | SB 2126 | | |
| SPONSOR: | Senator Garcia | | |
| SUBJECT: | Filings Administered by the Department of State | | |
| DATE: | April 9, 2001 | REVISED: 04/10/01 | |

| | ANALYST | STAFF DIRECTOR | REFERENCE | ACTION |
|---|---|---|---|---|
| 1. | Gillespie | Maclure | CM | Fav/1 amendment |
| 2. | | | GO | |
| 3. | | | AGG | |
| 4. | | | AP | |
| 5. | | | | |
| 6. | | | | |

## I. Summary:

Senate Bill 2126 requires the Department of State (department) to cease serving as the filing officer and filing office for secured transactions under the Uniform Commercial Code by October 1, 2001. The bill directs the department to contract with the most qualified third-party contractor, who must also be capable, to perform the functions of the current filing system and exempts the contract from competitive procurement procedures. The bill specifies minimum qualifications for the contract and requires the department to verify performance. The bill provides that, for five years, the current level of filing fees, net of operating costs, must be collected and deposited with the department.

This bill substantially amends section 679.401, Florida Statutes. The bill also creates s. 679.4015, F.S., and an unnumbered section of the Florida Statutes.

## II. Present Situation:

### Article 9 of the Uniform Commercial Code, Secured Transactions

The Uniform Commercial Code (UCC) is a model state code that comprises 11 substantive articles. Article 9 of the UCC provides a statutory framework governing secured transactions. Each state, including Florida, has enacted Article 9 as the state's secured transaction statute.[1] A "secured transaction" is a business arrangement in which a debtor pledges personal property to a creditor to guarantee payment of an obligation.[2] Secured transactions are executed through security agreements. If a debtor defaults under the terms of the security agreement, the creditor

---

[1] See ch. 679, F.S.

[2] *Black's Law Dictionary* 1357 (7th ed. 1999).

may take possession of the debtor's personal property, known as collateral, and sell the collateral to satisfy the obligation. The creditor's interest in the debtor's property is called a security interest.

There are two key events in the creation of a security interest: attachment and perfection.[3] Attachment occurs when the security interest becomes effective between the creditor and the debtor as specified in the security agreement. Perfection occurs when the creditor establishes his or her priority in relation to other creditors of the debtor in the same collateral. The creditor with priority may use the collateral, before other creditors subsequent in priority, to satisfy the debtor's obligation when the debtor defaults. Perfection occurs when a financing statement is filed as a public record. Generally, creditors have priority in the order they filed the financing statements.

Article 9 relies upon financing statements, filed as public records, as the means for creditors to determine if any security interests precede theirs. Thus, financing statements function as notice to creditors. Consequently, a subsequent secured creditor cannot complain that his or her extension of credit was made in ignorance of prior security interests found in a public record. Moreover, because financing statements are public records, a secured creditor cannot complain of the priority of prior interests. Although the terms of security agreements and the courts ultimately determine the settlements of loan defaults and bankruptcies, having secured transaction information available to other potential lenders assists in preventing the same collateral from unknowingly being used to secure multiple loans.

**Department of State is Florida's UCC Filing Office**

In Florida, the Department of State (department) is the ministerial filing agency that serves as the statewide central registry for filing UCC financing statements.[4] The Division of Corporations (division) within the department provides the public with electronic access to digital images of actual documents on file through the division's Internet website, http://www.Sunbiz.org. Each new document image is available electronically and certain past filings are also available, including UCC filings since January 1, 1997.[5]

Under current law, when each UCC financing statement is filed, the division submits the statement to a filing officer for review before creating a record in the database. The filing officer must determine whether a financing statement is "sufficient."[6] A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from whom information concerning the security interest may be obtained, gives a mailing address of the debtor, and contains a statement indicating the types, or describing

---

[3] *See* National Conf. of Comm'rs on Uniform State Laws, *Summary of Unif. Commercial Code, Revised Article 9, Secured Transactions, at* http://www.nccusl.org/uniformact_summaries/uniformacts-s-uccra9st1999.htm (last visited Apr. 8, 2001).

[4] *See* s. 679.401(1)(c) & (5), F.S.

[5] *See* Division of Corporations, Florida Dep't of State, *Our Division, at* http://www.dos.state.fl.us/doc/index.html (last modified Jan. 21, 2000).

[6] Section 679.402(1), F.S.

the items, of collateral.[7] The filing officer is allowed to reject a filing if it is not sufficient. This review helps to ensure that the information contained in each filing has been submitted correctly and that the division's database is accurate.

**Revised Article 9 and the "Open Drawer"**

In 1999, the National Conference of Commissioners on Uniform State Laws and the American Law Institute proposed a substantial revision to Article 9 of the Uniform Commercial Code (UCC), which follows the evolution of electronic commerce. To more readily allow direct electronic filing of UCC secured transactions, the Revised Article 9 eliminates the requirement that a debtor must sign the financing agreement[8] and provides that filing officers are not responsible for the legal sufficiency of the information that a filer presents for filing.[9] The Revised Article 9 allows only a limited number of reasons that a filing officer may reject the filing of a financing statement,[10] thus making filing office operations more ministerial.[11] This new filing system established by Revised Article 9, which eliminates the filing office's substantive review of UCC filings, is commonly known as the "Open Drawer."

Thirty-three states have adopted Revised Article 9 of the Uniform Commercial Code,[12] and Florida is one of 19 states that have introduced legislation to enact Revised Article 9.[13]

**Competitive Procurement Procedures**

Under current law, all contracts for the purchase of contractual services by state agencies in excess of $25,000 must be awarded by competitive sealed bidding unless otherwise provided by law.[14]

### III. Effect of Proposed Changes:

This bill requires the Department of State (department) to cease serving as the designated filing office and filing officer for secured transactions under the Uniform Commercial Code (UCC) by October 1, 2001. Because current law establishes the department as the proper place to file UCC

---

[7] *Id.*

[8] Steven O. Weise, *An Introduction to Revised UCC Article 9* 8 (Jan. 1, 2001).

[9] Intercounty Clearance Corp., *Revised Article 9: Highlights of "The Model Act"* 8 (Feb. 23, 1999).

[10] Uniform Commercial Code s. 9-516 (1999); Steven O. Weise, *A Comparison of Former Article 9 and New Article 9* 17 (Jan. 1, 2001); Intercounty Clearance Corp., *supra* note 9, at 6-8.

[11] National Conf. of Comm'rs on Uniform State Laws, *Summary of Unif. Commercial Code, Revised Article 9, Secured Transactions*, at http://www.nccusl.org/uniformact_summaries/uniformacts-s-uccra9st1999.htm (last visited Apr. 8, 2001).

[12] National Conf. of Comm'rs on Uniform State Laws, *A Few Facts About Revised UCC Article 9, Secured Transactions*, at http://www.nccusl.org/uniformact_factsheets/uniformacts-fs-ucca9.htm (last visited Apr. 8, 2001).

[13] *Id.*

[14] Section 287.057(1), F.S.

financing statements, the bill allows an alternative filing office and filing officer to be provided by law. In lieu of the current filing system in which the department is the filing office and filing officer, the bill creates the Florida Secured Transaction Registry and directs the department to contract with a capable third-party contractor to perform the administrative and operational functions of the current filing system. The bill exempts the contract from competitive procurement procedures, but requires the department to select the most qualified contractor. The bill requires the contract qualifications to ensure, at a minimum, that the new filing system:

- Is comparable and compatible with the current filing system;
- Is open to the public and accessible through the Internet;
- Will maintain filings as public records;
- Will provide for oversight and compliance audits by the department; and
- Will maintain the current level of filing fees and procedures for the deposit of revenues with the department, net of operating costs, for five years.

The bill requires the department to develop performance standards to assure that the filing system is accurate and complete. The department must periodically verify these standards are being met and may modify the standards as needed. Because the "Open Drawer" approach is advanced by Revised Article 9 of the UCC, if Florida enacts Revised Article 9, it appears the importance of the state ensuring an accurate and complete registry will be partially reduced.

The bill provides a legislative finding that, consistent with revisions of the UCC drafted by the National Conference of Commissioners on Uniform Laws, there is no longer a need for government regulation of Florida's secured transaction registry. This finding also states that self-administration of the registry by the lending industry is consistent with the legislative policy of reducing governmental regulation and involvement in commerce.

The bill takes effect upon becoming a law *except as otherwise provided* in the bill; however, no provision of the bill provides a different effective date.

IV. **Constitutional Issues:**

   A. Municipality/County Mandates Restrictions:

   None.

   B. Public Records/Open Meetings Issues:

   None.

   C. Trust Funds Restrictions:

   None.

V.  **Economic Impact and Fiscal Note:**

   A.  Tax/Fee Issues:

   The Department of State (department) reports that Uniform Commercial Code (UCC) filings generate about $5 million per year to the General Revenue Fund. The bill provides that the Florida Secured Transaction Registry must maintain the current level of filing fees, net of operating costs, for five years. According to the department's Long Range Program Plan, its estimated average cost per UCC filing for FY 2000-2001 is $1.75 per filing.[15] Because the Revised Article 9 of the UCC encourages electronic filing of financing statements and eliminates the requirement that a debtor sign a paper form, the department anticipates that a third-party contractor should be able to reduce filing costs to less than $1 per filing. Even if the third-party contractor does not reduce current operating costs, for the first five years of the contract, the amount deposited from filing fees should be substantially similar to the current year. After five years, however, the bill allows the filing fees to be reduced. Accordingly, General Revenue Fund collections could be reduced by as a much as $5 million in FY 2006-2007.

   B.  Private Sector Impact:

   Private sector firms that file financing statements under the Uniform Commercial Code (UCC) would not experience any difference in the cost of these activities for at least five years. After five years, these private sector firms could experience a reduction in filing fees if the third-party contractor reduced the amount of these fees. Under current law, the fee for filing the first page of a financing statement is $25, and the fee for each additional page is $3.[16]

   C.  Government Sector Impact:

   The Department of State plans to eliminate 10 FTEs when it contracts for the performance of its duties as the Uniform Commercial Code (UCC) filing office and estimates that this would result in a recurring reduction in the department's operating costs of $290,734. The cost of contracting for the performance of this function has not been estimated. Because the operating costs of the third-party contractor would likely offset any savings from reducing positions, the bill does not appear to have a government sector impact.

VI.  **Technical Deficiencies:**

   None.

VII.  **Related Issues:**

   None.

---

[15] Florida Dep't of State, *Long Range Program Plan FY 2001-2002 through FY 2005-2006* 23 (Jan. 5, 2001).

[16] Section 15.091, F.S.

## VIII. Amendments:

#1 by Commerce & Economic Opportunities:
Deletes everything after the enacting clause and inserts provisions that are substantially similar to the original bill, except that the amendment removes an exemption created by the original bill from the competitive procurement procedures in ch. 287, F.S.; allows a private filing agency to perform the duties of the filing office under contract with the Department of State (department); allows a Uniform Commercial Code (UCC) filing agent to perform the duties of the filing officer under a separate contract with the department or with a private filing agency if permitted by the department; extends the date that the Secretary of State will cease to be the filing office and filing officer from October 1, 2001, to October 31, 2001, and clarifies the Secretary of State will not cease to perform those duties until that date or when a contract with a private filing agency takes effect, whichever occurs later; increases the specificity of the qualifications for a private filing agency and a UCC filing agent; provides qualified immunity from civil liability for a private filing agency and a UCC filing agent; prohibits a contract with a private filing agency or a UCC filing agent from being assignable or otherwise transferable without the consent of the Secretary of State; establishes procedures for the Secretary of State to assume the duties of the filing office and filing officer if a private filing agency or a UCC filing agent fails to perform its duties or becomes bankrupt, insolvent, or is in receivership; limits the contractual rights of a private filing agency or a UCC filing agency whose contract is terminated by the department; clarifies that UCC filings that are filed with a private filing agency or a UCC filing agent are the property of the state; requires disclosure of filings by a private filing agency or a UCC filing agent; limits use of UCC filings by a private filing agency or a UCC filing agent; establishes exclusive original jurisdiction for litigation between the department, a private filing agency, and a UCC filing agent; entitles the department to emergency injunctive relief if UCC records are not turned over to the department; and expands legislative intent. (WITH TITLE AMENDMENT)

This Senate staff analysis does not reflect the intent or official position of the bill's sponsor or the Florida Senate.